UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/2023
```

---------------------------------------------------------------- X
                        :

PAUL REIFFER,                      :
                        :

             Plaintiff,   :          1:22-cv-2374-GHW
                        :

        -against-       :          MEMORANDUM
                        :          OPINION & ORDER

NYC LUXURY LIMOUSINE LTD.,    :
                        :

            Defendant.  :
                        :

---------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Plaintiff, Paul Reiffer, is a professional photographer.  He created, and copyrighted, an image

of the New York skyline framed by the Brooklyn Bridge and the East River.  Mr. Reiffer's name

appeared in the image in bold text.  Defendant, NYC Luxury Limousine Ltd., operates a limousine

business in the New York City area.  Defendant saw Plaintiff's work and decided to use it as the

main background image for Defendant's commercial website—so it did.  And in doing so,

Defendant removed Mr. Reiffer's name from the image.  Defendant did not ask for permission.

Because Defendant copied Plaintiff's copyrighted image without permission and removed copyright

management information from it, Defendant is liable for violations of the Copyright Act and the

Digital Millennium Copyright Act.  And because the position taken by Defendant in this litigation

was objectively unreasonable, and dismissively trivialized Plaintiff's action, Defendant must pay

Plaintiff's reasonable attorney's fees and costs.

## I.    BACKGROUND

### A.    Facts

      Mr. Reiffer is a professional photographer.  Defendant's Response to Local Rule 56.1

Statement, Dkt. No. 35 (the "56.1 Response") ¶ 1.  In 2017, Mr. Reiffer created the photograph of

the New York City skyline shown below (the "Work"). *Id.* ¶ 2.



Dkt. No. 34, Ex. 2. When he created the Work, Mr. Reiffer applied "copyright management information" to the Work. 56.1 Response ¶ 3. As shown above, that information consists of Mr. Reiffer's name in a white font superimposed over the deep blue of the East River: the information is clearly evident. Mr. Reiffer registered the Work with the Register of Copyrights on May 8, 2017. *Id.* ¶ 4; Dkt. No. 34, Ex. 1 (evidence of registration).

On September 21, 2021, Mr. Reiffer discovered that an altered version of the Work was being used as the main background image on www.nynylimo.com (the "Website"). 56.1 Response ¶ 6. The Website is owned, controlled and operated by Defendant, which, as its name suggests, operates a limousine business. *Id.* ¶ 7.

When Defendant placed the Work on its website, it altered the image. Most importantly, it cropped the image so that the copyright management information with Mr. Reiffer's name could no longer be seen. Defendant also altered the Work by adding a stray black dot in the sky between the buildings to the left of the center of the Work. *Id.* ¶ 30. This is an image of the Work as it appeared

on Defendant's Website:



Dkt. No. 34, Ex. 3.  Defendant was not authorized to display the Work in any form.  56.1 Response

¶¶ 24-27.  Defendant was not authorized to alter the Work; it was certainly not authorized to

remove Mr. Reiffer's name from the image.

As a professional photographer, Mr. Reiffer licenses his images for money.  Mr. Reiffer

presented undisputed evidence that he has licensed other images for what he describes as "similar"

use for between €5,800 and €8,900.  Plaintiff's Declaration in Support of Summary Judgment, Dkt.

No. 34-8 ("Reiffer Decl.") at ¶ 18; Dkt. No. 34-4.  Mr. Reiffer has asserted that his price to license

the Work for use on Defendant's website would have been $8,500.  Reiffer Decl. ¶ 18.

**B.     Procedural History**

Mr. Reiffer initiated this action on March 23, 2022.  Dkt. No. 1.  The Court ordered the

parties to attend mediation prior to the initial pretrial conference.  Dkt. No. 7.  On April 18, 2022,

Defendant filed an answer to Plaintiff's complaint.  Dkt. No. 10 (the "Answer").

Ominous signs of Defendant's unwillingness to engage meaningfully in the litigation emerged shortly thereafter.  On June 22, 2022, the mediation office reported that the Court-ordered mediation had not taken place because "one or both parties failed . . . to participate in the mediation."  Dkt. No. 12.  It soon emerged that Defendant's counsel was the person who had failed to participate, for on the same date, Plaintiff's counsel wrote the Court requesting an extension of time to complete the mediation.  Dkt. No. 13.  Plaintiff's counsel reported that "Defendant's counsel has been unresponsive to requests to confirm his availability to mediate . . . ."  *Id.*  Plaintiff's counsel asserted that he "continue[d] to believe that mediation would greatly benefit the parties at this point."  *Id.* at 2.  Hopeful that the parties would work to resolve the case early through settlement discussions through the ordered mediation process, the Court granted the requested extension of time to permit the parties to engage in mediation to resolve the case.  Dkt. No. 14.

But on July 12, 2022, Plaintiff's counsel sent the Court another letter writing to "inform the court of Defendant's noncompliance with your Honor's order . . . ."  Dkt. No. 15.  Defendant's counsel had not made himself available to mediate the dispute.  Defendant responded the next day, sphinxlike, that "I am seeking to resolve this matter with my Adversary without Court intervention and will continue to do so."  Dkt. No. 16.  The response did not explain why Defendant had not complied with the Court's order that the parties participate in the Court's (free) mediation program to help them resolve the case early.  With Defendant unwilling or unable to attempt to resolve the case through the Court-ordered mediation, the case moved forward toward the scheduled initial pretrial conference.

In its order scheduling the initial pretrial conference, the parties were directed to submit a joint letter to the Court in anticipation of the conference.  Dkt. No. 8.  The deadline for submission of that letter came and went, so the Court ordered the parties to comply.  Dkt. No. 18.  Plaintiff responded to the order later the same day.  Dkt. No. 19.  But rather than submitting a joint letter

developed with the input of Defendant, Plaintiff submitted a letter that was written without the input of Defendant.  In it, Plaintiffs informed the Court that "[d]espite best efforts, Plaintiff is unable to reach Defendant's counsel which is inhibiting the resolution and progress of this case."  *Id.* at 3.  Plaintiff still noted his desire to resolve the case early through a negotiated resolution: "Plaintiff[] would like to request a settlement conference."  *Id.*

The Court held the initial pretrial conference on July 21, 2022.  Defendant's counsel appeared together with counsel for Plaintiff.  During the conference, each of the parties had the opportunity to describe their view of the case.  Defendant's counsel described the case as a minor one, and notwithstanding his failure to attend the previously ordered mediation sessions, emphasized his interest in resolving the case through mediation:

> MR. DEMAIO:  I think that it's a very minor case.  It lends itself to a prompt settlement.  And I think that the best way to handle it, with your Honor's indulgence, is maybe to -- I'm mostly a state creature, I'm actually doing this case pro bono, this poor man lost everything during COVID – I'm hoping that we can set it down -- in the state court we call it a mediation, I'm assuming that there's a very similar procedure here in the federal court -- where we can try to resolve it.  He's willing to pay some money.  I don't know that, should this ever go to verdict, since we have a single defendant, a corporation that's now defunct, I think they would have a great deal of trouble collecting on the judgment, so I would like very much to get rid of this case.

Transcript of July 21, 2022 Hearing ("July Tr.") at 4:18-5:6.

> The Court responded to defense counsel's remarks about the value of mediation in the case.

> THE COURT:  So let me make a few remarks, and then we'll talk about next steps.  So first, yes, there is a mediation process here.  I actually ordered that the parties attend mediation.  Counsel for defendant, my understanding is that you chose not to participate. . . .  So there is such a thing as mediation here.  I ordered it.  The parties, in this case -- as I understand it, you -- chose not to participate in it after an extension.  So at this point, while I very much agree that mediation is the best approach, I'm going to put in place a schedule for full litigation of the case, given the parties' failure to comply with my order to participate in mediation previously.  I fully agree that mediation is the best way to resolve a case like this.  But when parties refuse to comply with my order twice, I no longer take great credit that they're going to do it.

*Id.* at 5:13-6:7.

The Court then set a schedule for completion of discovery in consultation with the parties. During the course of that conversation, counsel for Defendant asserted that "Defendant requests no discovery." *Id.* at 7:23. Nonetheless, the Court established a discovery schedule designed to permit both parties the opportunity to conduct plenary discovery in the case. Prompted by Defendant's counsel's remarks about the need for discovery, the Court reminded him that the case was a real case until resolved.

> THE COURT: Counsel for defendant, just a brief note, you said that the defendant requests no discovery. I take no position on what your litigation strategy is. I just remind you, this is a real federal case. It will not go away. If you choose not to litigate it, your strategy is your own. I just remind you that your view regarding its importance does not change the fact that it is here and the fact that it must be litigated until it is resolved. Again, I hope that the parties will resolve it. But I also expect that counsel will take the case seriously for so long as it is pending.

*Id.* at 16:9-18.

Plaintiff's counsel then requested that the Court schedule another opportunity for the parties to engage in mediation. *Id.* at 16:24-17:2 ("I understand that your Honor has already ordered mediation twice. We are still of the position that it would be helpful. I think that, perhaps, defendant's counsel understanding the importance and real-life importance of this case would be more inclined to help us schedule the mediation."). Following Plaintiff's request, the Court asked Defendant's counsel if it should again order the parties to mediation. "So agreed," he responded. *Id.* at 17:14.

Following the initial pretrial conference, the Court entered a case management plan and scheduling order establishing discovery deadlines for the case. Dkt. No. 22. The Court also ordered the parties back to mediation. Dkt. No. 21. Again, the parties did not participate in the Court-facilitated mediation process, notwithstanding Defendant's counsel's request and agreement. *See* Dkt. No. 23.

The parties then had the opportunity to conduct discovery. Plaintiff served his

interrogatories and requests for production on Defendant on July 22, 2022.  56.1 Response ¶ 15.  A

few months later, on September 1, 2022, Plaintiff served his requests for admission on Defendant.

*Id.* ¶ 16.

The Court heard nothing from the parties until November 8, 2022, when Plaintiff filed a

letter seeking leave to file a motion for the imposition of sanctions against Defendant as a result of

its asserted failure to litigate the case.  Dkt. No. 24.  In the letter, Plaintiff asserted that Defendant

had failed to respond to his discovery requests.  *Id.*

The Court held a conference to discuss Defendant's failure to respond to Plaintiff's

discovery request on November 10, 2022.  At the outset of the conference, the Court reprised its

instructions during the initial pretrial conference.  Transcript of November 10, 2022 Hearing

("November Tr.") at 4:5-16.  ("THE COURT:  During the initial pretrial conference, the Court

made a number of comments to the parties about the nature of the parties' obligations to participate

fully in litigation, even if they thought that the case might or should or ought to settle, reminding

counsel for defendant, who informed us that he was here to essentially help a friend, that that

doesn't matter, and that, as counsel of record, he has full obligations to act consistent with his

professional responsibilities on behalf of his client and that his client is bound by the consequences

of his decisions as his agent.").  Plaintiff's counsel then detailed Defendant's failure to respond to his

discovery requests, including Defendant's failure to respond to his requests for admission within the

thirty-day window after they were served.

Defendant's counsel admitted that he had not provided responses to the discovery requests.

He explained his failure to respond as principally an outgrowth of the result of the fact that he

thought that this was a case "that should go away."  *Id.* at 10:7-23 ("MR. DEMAIO:  It is a case, I

believe that should go away, and I can only imagine how busy your Honor is and how you have

cases far more substantial. . . .  This case is de minimis, it should not be proceeding.  If your Honor

wants to direct me to comply and in a reasonable amount of time, I guess I can do that.").

The Court reminded Defendant that "as I told the parties during our prior conference, in the absence of a settlement, this real, federal litigation proceeds . . . [c]ounsel for defendant, it does not matter that you think that the case ought not to be here. Defendants and parties do not get to choose to fail to comply with a court order because they wish that the case did not exist. That is simply not a legitimate argument." *Id.* at 13:13-20. Defendant's justification for its failure to respond timely to Plaintiff's discovery requests was inadequate. The Court ordered Defendant to respond to the outstanding requests for production and interrogatories. Defendant did not request an extension of the deadline for it to respond to Plaintiff's requests for admission. That deadline was not extended. *See* Dkt. No. 26.

Following the Court's order, Defendant responded to Plaintiff's interrogatories and requests for production. 56.1 Response ¶ 20. Defendant never responded to Plaintiff's requests for admission. *Id.* ¶ 19.

On February 3, 2023, Plaintiff filed this motion for summary judgment, together with his supporting documents. On March 1, 2023, Defendant filed a brief opposing the motion for summary judgment in part. Dkt. No. 35 ("D's Opp'n"). Critically, Defendant's brief concedes Defendant's liability. *Id.* at 1 ("Defendant concedes the unauthorized use of the duly registered image in question."). But Defendant disputes the amount of damages that should be awarded. Defendant contends that Plaintiff failed to demonstrate "actual pecuniary damages," asserting that Plaintiff's assertion of a value of $8,500 for the license is unfounded. *Id.* at 2. Defendant also argues that the value of the image is low because "it defies credibility to believe customers choose a limousine service based upon the most ordinary picture of the New York skyline." *Id.* As to the proper measure of damages, Defendant argues—without evidentiary support—that "[s]ince Plaintiff never licensed the image in the past, it appears he would have accepted a minimal amount, say $500

or $1000, if offered to exhibit it." *Id.* at 3.  Finally, Defendant contends that the Court should not exercise its discretion to award attorneys' fees.  In Defendant's counsel's view—the fact that Defendant "offered a minimal defense, sought no discovery and did not respond to the Notice to Admit" limited the expenses and attorneys' fees incurred by Plaintiff, making an award of fees inappropriate.  *Id.* at 4.

Together with its submission, Defendant offered one "fact" in its own Local Rule 56.1 statement, namely that Defendant "upon Notice of the Violation, promptly removed the image from its website."  Defendant's Local Rule 56.1 Statement, Dkt. No. 35 at ¶ 2.  Defendant cited to the unverified Answer as the source for this "fact."  The motion was fully briefed on March 15, 2023, when Plaintiff filed his reply.  Dkt. No. 36.  Plaintiff did not respond to Defendant's Local Rule 56.1 statement.

## II.    LEGAL STANDARD

### A.    Summary judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  (quoting former Fed. R. Civ. P. 56(c)).  The movant must "identify[] each claim or defense—or the part of each claim or defense—on which" it seeks summary judgment.  Fed. R. Civ. P. 56(a).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

The movant bears the initial burden of showing "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).   If the movant carries that burden, the burden shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Id.* (citing *Celotex*, 477 U.S. at 323).   To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)) (emphasis omitted).   "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.   And the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.   At summary judgment, the non-movant "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted).

On a motion for summary judgment, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (quotation omitted).   The court cannot "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

### B.   Admissions of Fact

Defendant has admitted nearly all of the facts that are at issue in this motion in four ways: (1) through its Answer, (2) through its failure to respond timely to Plaintiff's requests for admission;

(3) through its responses to Plaintiff's Rule 56.1 statement; and, (4) finally, and most obviously, in its briefing on the motion for summary judgment itself.

### 1.  The Answer

Defendant conceded some elements establishing its liability in its Answer.  "Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation."  *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).  Defendant admitted to the facts contained in paragraph 25 of the complaint, which asserted the following: "When NYC LL, LTD copied and displayed the Work at issue in this Case, NYC LL, LTD removed Reiffer's copyright management information from the Work."  Dkt. No. 1 ¶ 25; Answer ¶ 1.

The Court highlights here, however, that Defendant did not concede all elements of Plaintiff's claims; instead, Defendant expressly denied a number of allegations in the complaint. Answer ¶ 2.  The Answer also presented a number of affirmative defenses, including an assertion that the copyright was invalid.  *Id.* ¶ 8 ("The work at issue is not subject to copyright, is not properly registered and is not unique; and is virtually identical to thousands of other images in the public domain.").  The Answer also asserted that Plaintiff had not acquired "personal jurisdiction over This Answering Defendant."  *Id.* ¶ 7.  It also contended that Plaintiff had failed to state a claim and that he had failed to meet "every legal prerequisite" and "every factual prerequisite" to the action.  *Id.* ¶¶ 4-6.

### 2.  The Requests to Admit

Defendant also admitted all of the facts presented in Plaintiff's requests to admit.  Pursuant to Federal Rule of Civil Procedure 36 a "party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ."  Fed. R. Civ. P. 36(a)(1).  "A matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed

serves on the requesting party a written answer or objection." Fed. R. Civ. P. 36(a)(3).  A matter

admitted under Rule 36 "is conclusively established unless the court, on motion, permits the

admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).  Admissions made pursuant to Rule

36 may be used to support a motion for summary judgment. *Donovan v. Carls Drug Co., Inc.*, 703 F.2d

650, 651–52 (2d Cir. 1983), *rejected on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134

(1988); *see also S.E.C. v. Dynasty Fund, Ltd.*, 121 F. App'x 410, 412 (2d Cir. 2005) (summary order).

   Defendant did not respond to Plaintiff's requests to admit within 30 days of service.

Defendant did not request an extension of that deadline.  Defendant has not moved the Court for

its admissions to be withdrawn or amended.  Therefore, the facts set forth in Plaintiff's requests for

admission are conclusively established for purposes of this motion.  Unsurprisingly, those admitted

facts establish all of the elements of Plaintiff's claims.[1]

### 3.    The Local Rule 56.1 Responses

   Defendant also expressly admitted the facts presented in Plaintiff's Local Rule 56.1

statement.  "Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern

and Eastern Districts of New York ('Local Rule 56.1') requires a party moving for summary

judgment to submit 'a separate, short and concise statement' setting forth material facts as to which

there is no genuine issue to be tried." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001) (citing

Local Rule 56.1(a)).  "A party opposing summary judgment must respond with a statement of facts

as to which a triable issue remains." *Id.* (citing Local Rule 56.1(b)). "The facts set forth in a moving

party's statement 'will be deemed to be admitted unless controverted' by the opposing party's

---

[1] The requests for admission included the following:  "1. Admit that NYC Luxury Limo Ltd. owns and operates the Website www.nynylimo.com. 2. Admit that the Website contained Plaintiff's Work. 3. Admit that the Website used Plaintiff's Work as the main background image of the website. . . . 6. Admit that the Work was always the background image of NYC Luxury Limo's Website. 7. Admit that NYC Luxury Limo did not have a license to use the Work. 8. Admit that the screenshot attached as Exhibit 1 is an accurate depiction of the Website on September 21, 2021. 9. Admit that NYC Luxury Limo did not commission the Work. 10. Admit that NYC Luxury Limo did not pay to use the Work. 11. Admit that NYC Luxury Limo did not have a license to use the Work. 12. Admit that NYC Luxury Limo does not have an invoice demonstrating payment for the Work." Dkt. No. 34-5 (the "RFAs").

statement." *Id.* (citing Local Rule 56.1(c)). "Each statement by the movant or opponent . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Rule 56.1(c).

Significantly, "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (*quoting Holtz*, 258 F.3d 74). Even if a party fails to controvert its adversary's assertion in a Local Rule 56.1 statement, the assertion is not deemed admitted unless it is supported by admissible evidence. *Id.*

Defendant admitted all of the facts asserted in Plaintiff's Local Rule 56.1 statement. Those include all of the facts laid out in the factual background section of this opinion, which establish Plaintiff's ownership of a registered copyright in the Work, and Defendant's copying of the image, among other things. Defendant also admitted that Defendant "saw plaintiff's attribution on the Work. 56.1 Response ¶ 28. Defendant admitted that it "removed attribution to plaintiff prior to uploading and displaying plaintiff's Work on its Website." *Id.* ¶ 29. Defendant also admitted to altering the image through the inclusion of the stray black dot in the sky between buildings. *Id.* ¶¶ 31, 32. Defendant also admitted that it did not have possession of "any documents to support its affirmative defenses." *Id.* ¶ 30.

Defendant's assertion in its Local Rule 56.1 statement that Defendant "upon Notice of the Violation, promptly removed the image from its website" is unsupported by record evidence, and, therefore, is not accepted as true by the Court. That assertion in Defendant's Local Rule 56.1 statement is supported by a citation to paragraph 10 of the Answer which recites in conclusory fashion as an affirmative defense the following: "Upon Notice of the Claim, Defendant took all steps in mitigation thereof." Answer ¶ 10. The Answer is not verified. Therefore, it is merely a

pleading, not competent evidence, and does not provide proper support for the assertion in

Defendant's Local Rule 56.1 statement. *C.f. Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Because the statement in Defendant's Local Rule 56.1 statement is not supported by competent

evidence, the Court may not accept it as true, notwithstanding the fact that Plaintiff did not respond

to the assertion. *See Giannullo v. City of New York*, 322 F.3d at 140.[2]

### 4. The Opposition

In its opposition brief, Defendant expressly concedes liability with respect to Plaintiff's

claims. D's Opp'n at 1 ("Defendant concedes the unauthorized use of the duly registered image in

question."). Defendant also did not oppose any of the arguments presented by Plaintiff in its

motion with respect to the issue of liability. "[W]hen a counseled party moves for summary

judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied

as to some claims while not mentioning others may be deemed an abandonment of the

unmentioned claims.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016)

(citing *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)). That is because generally, "a partial

response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon

others." *Id.* (citing *Jackson*, 766 F.3d at 196). So a court may "infer from a party's partial opposition

that relevant claims or defenses that are not defended have been abandoned." *Id.* (citing *Jackson*, 766

F.3d at 198). Plaintiff's brief argued that Defendant was liable with respect to both of his claims.

Defendant did not respond to those arguments. It limited its response to the presentation of

arguments about the appropriate measure of damages. Thus, Defendant has conceded its liability.

---

[2] Even if the Court could consider the factual assertion, the Court notes several issues with it. First, the text of the
answer does not provide support for the statement in Defendant's Local Rule 56.1 statement. The Answer states that
Defendant "took all steps in mitigation thereof." It does not assert that Defendant removed the image or when. And
Defendant's Local Rule 56.1 statement, like the Answer, does not state what the Notice of Claim was--a letter before the
suit, the suit itself . . .--and it does not state how long after receiving the "Notice of Claim" the image was removed.
Defendant is counseled. Its counsel failed to take the most basic step: supporting assertions of fact with competent
evidence, such as an affidavit.

III.     **DISCUSSION**

A.     **Violation of the Copyright Act**

The admitted facts establish Defendant's liability with respect to Plaintiff's claim under the Copyright Act.  "In a copyright infringement case, the plaintiff must show:  (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)).  Defendant has admitted that Plaintiff owns a valid copyright in the Work that was properly registered.  *See* 56.1 Response ¶¶ 4-5; Dkt. No. 34, Ex 1.  "Registered copyrights are presumed valid."  *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 109 (2d Cir. 2001).  Defendant also admitted unauthorized copying of the Work.  Answer ¶ 1; RFAs ¶¶ 1-12.  Accordingly, Plaintiff has established that Defendant is liable with respect to his claim for copyright infringement.

B.     **Violation of the Digital Millennium Copyright Act**

The admitted facts also establish that Defendant is liable with respect to Plaintiff's claim under the Digital Millennium Copyright Act (the "DMCA").  "The DMCA prohibits the removal or alteration of [copyright management information] CMI 'conveyed in connection with' creative works."  *Mango v. BuzzFeed, Inc.,* 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(c)).  "CMI includes '[t]he name of, and other identifying information about, the author . . . [or] copyright owner of the work.'"  *Id.*  To establish a violation of the DMCA, a plaintiff must "prove the following:  (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'"  *Id.*

Defendant admitted that the Work contained CMI consisting of Mr. Reiffer's name.  *See, e.g.,*

56.1 Response ¶ 3.  Defendant also admitted that it had displayed the Work on the Website.  *Id.* at ¶ 22; *see generally* RFAs.  Defendant admitted that it knew that the CMI had been removed:  it removed it.  *See, e.g.*, Answer ¶ 1.  Defendant had reasonable grounds to know that its posting of the work without the CMI would enable, facilitate, or conceal its own infringement:  Defendant saw Plaintiff's attribution on the Work and removed it before uploading it to its website.  56.1 Response ¶¶ 28-29.  Accordingly, Plaintiff has established that Defendant is liable with respect to his claim for a violation of the DMCA.

### C.      Damages

#### 1.   Statutory Damages under the Copyright Act

Plaintiff is entitled to an award of statutory damages under the Copyright Act.  The Copyright Act provides that "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, . . . or (2) statutory damages, as provided by subsection (c)."  17 U.S.C. § 504(a).  A "copyright owner may elect, at any time before final judgment in rendered, to recover, instead of actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1)).  If the "court finds . . . that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504 (c)(2).  However, "[i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."  *Id.*

Here, Plaintiff has elected an award of statutory damages.  "When determining the amount of statutory damages to award for copyright infringement, courts consider:  (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the

copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). "A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility." *Id.* at 143 (internal quotation omitted).

"District courts enjoy wide discretion . . . in setting the amount of statutory damages." *Id.* (internal quotation omitted); *see also Burch v. Nyarko*, No. 06-civ-7022 (LAP)(GWG), 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (collecting cases) ("Case law reflects a wide range of awards where there have been infringing uses of photographs"). "Courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019), *aff'd,* 970 F.3d 167 (2d Cir. 2020).

Defendant's infringement was willful. Defendant saw Plaintiff's name on the Work, which attributed ownership to Plaintiff. 56.1 Response ¶ 28. Defendant intentionally altered the image when it posted the Work to its website to delete Plaintiff's name. Defendant's awareness of, and intentional deletion of, Plaintiff's name on the Work is sufficient to establish that, at a minimum, it recklessly disregarded the possibility that its conduct represented infringement. *See, e.g., Dermansky v. Tel. Media, LLC,* No. 19CV1149PKCPK, 2020 WL 1233943, at *5 (E.D.N.Y. Mar. 13, 2020) ("Plaintiff's allegations and exhibits support a finding that Defendant acted willfully: Defendant copied Plaintiff's photograph directly from another online article, ignored the notation that Plaintiff was the photographer, and removed the gutter credit.") (quoting *Mantel v. Smash.com Inc.,* No. 19-cv-

6113 (FPG), 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019)).[3]

All factors weigh in favor of the imposition of a meaningful award of statutory damages. First, as described above, Defendant's conduct was willful:  it cribbed an image to use on its website without authorization and altered the image to delete attribution to the Work's author.

Second, there is no evidence on the record of the profits earned by Defendant as a result of its use of the image.  However, there is undisputed evidence that the licensing fee for the work would have been $8,500—a sum that Defendant saved by stealing the work, rather than paying to license it.  In his brief, Defendant's counsel speculates that "it appears [Plaintiff] would have accepted a minimal amount, *say* $500 or $1000, if offered to exhibit" the Work.  D's Opp'n at 2.  But Defendant has presented no evidence to support this assertion:  counsel's equivocal wording ("*say* $500 or $1000") makes it plain that the number he presents is speculation presented to support an argument, not a fact.  Plaintiff's evidence is uncontested.  While Plaintiff does not assert that he previously licensed the Work, his sworn assertion regarding the value of a license for the Work is supported by invoices for similar licenses that he has presented as evidence to the Court.

Third, the revenue lost by Plaintiff is the value of the licensing fee that should have been paid by Defendant—which, as is indisputably established on this record, is $8,500.

Fourth, there is a need to award Plaintiff a significant sum of statutory damages in order to have a deterrent effect.  "Awards of statutory damages serve two purposes—compensatory and punitive." *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986).  "At the punitive end of the scale, the statutory maximum is typically reserved for 'truly egregious conduct such as where a defendant has been adjudged to have willfully infringed, yet continued the same pattern of behavior in contravention of court order.'" *Id.* (quoting *EMI Apr. Music Inc. v. 4MM Games, LLC,*

---

[3] Defendant argues in its opposition the following:  "The cropping of the image was sloppily done to facilitate the use of the image and not to hide the trademark." D's Opp'n at 1.  But, tellingly again, Defendant offers no sworn evidence of Defendant's intentions, only unsupported argument by counsel.

2014 WL 325933, at *5 (S.D.N.Y. Jan. 13, 2014)).  Here, Defendant intentionally used the Work, notwithstanding evident CMI, and Defendant removed Plaintiff's name before posting the image to its website.  However, there is no evidence of the most egregious type of conduct:  for example, Plaintiff does not contend that Defendant's infringement of the Work is continuing.

Fifth, Defendant was not cooperative in providing evidence regarding the value of its infringement.  As noted above, Defendant failed to comply with its discovery obligations timely, as required by the Federal Rules of Civil Procedure and the Court's scheduling order.  A court order was required in order to cause Defendant to respond to its basic discovery obligations.

And, finally, Defendant's conduct and attitude toward its infringement and this action has been consistently dismissive.  Defendant treats dismissively the significance of its theft of another's copyrighted artistic expression.  D's Opp'n at 1 ("The image at issue is not unique and is virtually identical to thousands of other images . . . .  it defies credibility to believe customer choose a limousine service based upon the most ordinary picture of the New York skyline.").[4]  Counsel argues that his client removed the image, but has failed to support that assertion with competent evidence.  And Defendant's conduct in the litigation of this action has indicated a similar level of disregard to the rights of Plaintiff as a copyright holder.  July Tr. at 4:18 ("MR. DEMAIO:  I think that it's a very minor case.").  Defendant has consistently demonstrated a cavalier and dismissive attitude toward Plaintiff's rights as a copyright holder.

Having considered all of these factors, the Court concludes that the imposition of statutory damages in the amount of three times the licensing fee that Plaintiff would have charged is appropriate.  Defendant will be ordered to pay Plaintiff $25,500 in statutory damages.

---

[4] Again, counsel for Defendant does not present any facts in support of this argument.  Counsel's jaundiced subjective assessment of the artistic merit of the copyrighted Work does not mitigate Defendant's liability or damages.

### 2. Statutory Damages under the DMCA

Plaintiff is entitled to an award of statutory damages under the DMCA.  Civil plaintiffs who are injured as a result of a violation of the DMCA may seek actual damages or statutory damages of $2,500 to $25,000 for each violation.  17 U.S.C. § 1203(c)(1)(A) and (B) ("At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.").  As with the evaluation of the level of statutory damages for a violation of the Copyright Act, the Court considers a number of factors when establishing statutory damages for a violation of the DMCA. Those include "the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Myeress v. Elite Travel Grp. USA,* No. 18-CV-340 (AJN), 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (Nathan, J.) (quoting *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014)); *see also Mango*, 356 F. Supp. 3d at 378 (noting that "courts typically assess the 'circumstances of the violation' and willfulness of the violation").

An award of $5,000 in statutory damages as a result of Defendant's violation of the DMCA is warranted here.  As described above, Defendant's conduct was willful:  it saw the CMI on the Work and intentionally removed it before posting the image to its website.  This award—at the lower end of the range of potential statutory damages—avoids duplicating compensation for the same conduct.[5]  It is also in line with awards of statutory damages granted recently by other courts. *See Mango,* 356 F. Supp. 3d at 378 (collecting cases).  The Court hopes that this significant incremental award will suffice to deter similar violations.

---

[5] Because the Copyright Act and the DMCA, "protect different interests" a plaintiff may elect an award of statutory damages under both statutes. *Myeress*, 2018 WL 5961424, at *4.

### a. Attorney's Fees

Plaintiff is entitled to an award of attorney's fees.  The Copyright Act permits the award of attorney's fees and costs.  17 U.S.C. § 505 ("the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs.").  The DMCA does as well.  17 U.S.C. § 1203(b)(5) ("the court-- . . . in its discretion may award reasonable attorney's fees to the prevailing party").  The Supreme Court has established a "pair of restrictions" with respect to a district court's discretion in considering a motion for attorney's fees under Section 505 of the Copyright Act.  *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197, 202 (2016).  "First, a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment."  *Id.* (alteration in original) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)).  "Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'"  *Id.*  The Supreme Court has also observed that "several nonexclusive factors" may inform the district court's analysis, including "frivolousness, motivation, objective unreasonableness . . . [,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty*, 510 U.S. at 534 n.19 (internal quotation marks omitted).

A district court "should give substantial weight to the objective reasonableness of the losing party's position."  *Kirtsaeng*, 579 U.S. at 199.  Still, "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one."  *Id.* at 208.  "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals."  *Id.* at 209.  These principles apply to the discretionary award of attorney's fees under the DMCA as well as under the Copyright Act.  *See Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 59 (2d Cir. 2021) (summary order).

21

The Court has considered the application for attorney's fees by Plaintiff in this case. Plaintiff had a meritorious claim of infringement:  Defendant indisputably copied Plaintiff's Work and removed CMI containing Plaintiff's name before posting the Work to Defendant's website. Plaintiff had every right to pursue a claim against Defendant for that evident and now conceded violation.

Defendant's position in this litigation was objectively unreasonable.  At the outset, Defendant argues that it "conceded liability in his Answer."  D's Opp'n at 3 ("Since Defendant conceded liability in his Answer, there was excessive attorneying on behalf of the Plaintiff.").  That is false.  In its Answer, Defendant conceded that the Court had personal jurisdiction over it and subject matter jurisdiction over the case and that when Defendant "copied and displayed the Work at issue in this Case, [Defendant] removed Reiffer's copyright management information from the Work."  Complaint ¶ 25; Answer ¶ 1.  But Defendant also expressly denied a number of facts relevant to Plaintiff's claims, including the allegations that Defendant "copied the Work," Complaint ¶ 16; Answer ¶ 2, that "Reiffer has been damaged," Complaint ¶ 16; Answer ¶ 2, and that Defendant removed CMI from the Work "knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Reiffer's rights in the Work . . . ."  Complaint ¶ 38; Answer ¶ 2.  Moreover, Defendant denied knowledge in its Answer of a number of essential elements of Plaintiff's claims, including Plaintiff's ownership and registration of the copyright.  *See generally* Answer ¶ 3.

Defendant also asserted a number of affirmative defenses in its Answer.  At the outset, the Court notes that none of the affirmative defenses were pleaded with the degree of specificity required by the Second Circuit.  *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (holding that "the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense . . . .").  The affirmative defenses

22

presented in the Answer were conclusory with nearly no factual enhancement.

Still, the issues raised by the Answer were substantial:  Defendant asserted that "the work is not subject to copyright, is not properly registered and is not unique."  Answer ¶ 8.  Defendant contended as an affirmative defense "No Cause of Action Stated."  *Id.* ¶ 4.  It also contended that Plaintiff failed to meet "every legal prerequisite" and "every factual prerequisite" to commencement of the action.  *Id.* ¶¶ 5, 6.  And even though the Answer separately conceded the Court's personal jurisdiction over Defendant, Defendant's Fifth Affirmative Defense asserted that Plaintiff had failed "to acquire personal jurisdiction over This Answering Defendant."  *Id.* ¶ 7.

In sum, it is false for Defendant to assert that Defendant conceded liability in its Answer. Instead, it took positions in its Answer regarding Plaintiff's claims that required the litigation to proceed through discovery and motion practice.

As demonstrated by the record, Defendant had no factual basis for its affirmative defenses. Defendant expressly admitted that it did not have possession of "any documents to support its affirmative defenses."  56.1 Response ¶ 30.  And, indeed, Defendant has presented no evidence that the Work was not subject to copyright, or that it was not properly registered, notwithstanding the affirmative defense presented in the Answer.  Defendant never moved to dismiss the claims, despite the assertion of an affirmative defense that no cause of action had been stated.  In response to Plaintiff's motion for summary judgment, Defendant has conceded all of the elements of the claims that establish its liability.  The defense that the Court lacked personal jurisdiction was contravened in the same Answer in which it was asserted.  Defendant's position—asserting ill-pleaded affirmative defenses that it proved unable to support—was objectively unreasonable.

Defendant's cavalier and dismissive approach to this case also weighs in favor of an award of attorney's fees.  As described above, the parties were ordered to participate in mediation.  But defense counsel appeared at the first conference and asserted that he was unaware of whether

mediation existed in the federal court system.  Defendant's counsel was not responsive to his

adversary.  Defendant did not comply with its basic discovery obligations, requiring that the Court

order its compliance.

Defendant's counsel asserted at various times that this was a "minor" or "de minimis" case.

The Court appreciates that Defendant was unable to resolve the case on terms that were consistent

with its valuation of the case—Defendant was entitled to make a decision about the settlement value

of the case, and to require Plaintiff to prove its case.  But Defendant's litigation strategy—forcing

Plaintiff to do the work to litigate fully a case to which Defendant had no reasonable defense—

comes at a cost:  Plaintiff must bear the reasonable fees and costs of Plaintiff's attorneys.

The fact that Defendant did not seek discovery does not render an award of attorney's fees

inappropriate here.  Defendant's decision not to seek discovery reduces the amount of work that

Plaintiff was required to do—and thus the amount of its fees that Defendant will be required to

pay—but it does not relieve Defendant of the obligation to pay for Plaintiff's reasonable attorney's

fees and costs.  Defendant's litigation strategy required Plaintiff to take discovery and fully litigate

the case.

An award of attorney's fees in this case is warranted in this case to deter similar conduct by

parties similarly situated to Defendant.  Defendant's willful infringement harmed Plaintiff.  And

Defendant's conduct of this litigation—founded on the assertion of unsupported defenses and

marked by lassitude—imposed unnecessary costs on Plaintiff.  The Court believes that an award of

attorney's fees and costs is appropriate in order to deter such conduct.

Plaintiff is directed to submit a motion for his attorney's fees and costs.  The motion should

be accompanied by an affidavit describing, among other things, the experience of any timekeepers in

the case, and the amount and breakdown of all fees and costs.  The affidavit should attach

contemporaneous time records detailing the work on this case, and a spreadsheet calculating the

amount of fees and costs sought.  A native version of the spreadsheet should be emailed to the Court's chambers email account at WoodsNYSDChambers@nysd.uscourts.gov.  The supplemental fee motion is due no later than June 25, 2023; any opposition is due no later than July 6, 2023, and any reply is due no later than July 13, 2023.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED IN PART as to liability and the Court will award statutory damages with respect to each claim.  The Court will award reasonable attorney's fees and costs to Plaintiff following its evaluation of the supplemental application described above.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 34.

SO ORDERED.

Dated:  June 15, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge